Marvin, J.
The case of W. L. West, Admr., v. J. J. Dean, comes here upon a petition in error.
A suit was brought in the court of common pleas by Dean, the title of the case, as given in his petition, being “ J. J. Dean v. W. L. West, administrator of the estate of John Glenn, deceased.” The petition avers that .West is the administrator of the estate of Glenn; that Dean was the owner of certain personal property; that Glenn, whose estate is being administered by West, had a chattel mortgage upon that property; that West purchased the interest of Dean in the mortgaged property, agreeing to pay therefor “as administrator of the estate of John Glenn, deceased, ”the sum of fifty-two dollars. It avers that such payment has not been made, and prays for a judgment against said defendant, for that amount, with interesst.
Judgment was rendered in the court of common pleas, in these words: ‘‘It is,therefore, considered that said plaintiff recover of said defendant his said damages and also his cost of suit. Judgment is rendered against said defendant for his costs herein.”
That judgment was taken upon default,and the error complained of is, that the petition stated no facts which warranted the judgment; that everything being true, as stated in the petition, there was no ground for the judgment.
Two questions are here involved: one, as to whether there could be a judgment upon that petition against West as administrator of the estate of Glenn.
*263 West promised to pay, tbe petition alleges, “as administrator,” the sum of 152.00, for the interest of Dean in the mortgaged property. And, on the part of the defendant here — the plaintiff below — it was urged, that having made that promise “as administrator,” and having failed to pay, .judgment could be rendered against him as administrator; that it is fair to suppose the administrator regarded the buying in of the mortgaged property as the most advantageous manner of collecting the debt secured by the mortgage, and that, if it were such, then he might bind the estate to pay the 152.00.
It seems to us,that there is a mistake in supposing that the administrator may bind the estate to pay money'for the purchase of any such property.
I think there is a very general misunderstanding as to the duties of an administrator.
It is the business of the administrator of an estate to convert the personal property into money, and to pay the debts, and to distribute what is left, and it is no part of his duty, —mot only no part of his duty, but a violation of his duty, to undertake to buy property for the estate, even though he may think it will turn out to be to the advantage of the estate — and even though it does so turn out.
Suppose, after this property had been purchased by the administrator, it had been destroyed by 'fire or otherwise, immediately, is it possible that it can be said to have been the property of the estate when thus destroyed? I do not mean to say “the property of the estate;”I recognize that -an estate never owns anything — it is the thing owned; but is it possible that we could say it is a part of the estate, if it had been thus destroyed? The estate of a decedent is that which be owned at the time of his death, and no property, thereafter purchased by his personal representative or by any other person, ever becomes a part of such estate.
Our own Supreme Court have said, in the 28 Ohio St., *264 in the case of Peter Lucht, Admr,, etc. v. John Behrens, beginning on page 231, that an executor, not authorized by the will of the testator to do that, cannot carry on a business for, or of an estate, and incur debts which shall bind the estate; and gives reasons why that may not be done: liabilities may be incurred; an executor or administrator may make a mistake in thinking that he is doing what is advantageous to the estate; and at the conclusion of the opinion, this language is used:
“To allow jersonal representatives of estates to go beyond this, and, without authority of law, or under the will, to embark the assets of an estate in trade or business, however well-intentioned they may-be, and thereby subject the estate'to all the hazards of the venture, would encourage that which it has been the special policy of the law to prevent — the employment of trust property in any other mode than is clearly authorized. For aught we know (for the court refused to hear evidence on the subject from the defendant), this well-meant endeavor to preserve the business of the testator,for his sons, while paying the debts and supporting the family out of it, may have been disastrous; and if this judgment stands and is collected, it may defeat the express provisions of the will.”
It will be observed that the court does not say the business turned out disastrously, but that it may be disastrous, and the very fact that it may so turn out, establishes that the administrator or executor must not so invest the money, even through he thinks it will turn out for the best interest of the estate.
. In 5th Circuit Court Reports, page 12, McBride & McBride v. Louis Brucker, Admr., the court hold, that the administrator can not contract a debt for attorney’s fees which can be recovered out of the estate. He may pay attorney’s fees that are necessary in the administration of the estate and he will be allowed, in his account filed in the probate court, for proper and suitable fees paid to the attor *265 ney; but he can not bind the estate by a promise that out of Jit shall be paid attorney’s fees, even though it is proper that an attorney shall be employed.' The same is held in several other states, if not in all of them.
Woerner, in his American Law of Administration, sec. 356, says:
“It is a well recognized principle, that if liabilities are contracted* by the personal representative, although for the benefit and in the interest and behalf of the estate, it is not liable to creditors. Disbursements, reasonable in amount and for services necessary in the proper discharge of the duties imposed upon them, will constitute a charge in favor of the executors and administrators against the estate, although their allowance should leave no surplus to pay creditors of the deceased. ”
The case of Dailey v. Dailey, in the 66 Ala. R., 266, is a case where suit was brought by Lucinda Dailey against Geo. J. Dailey, as administrator of the estate of Geo.Dailey, deceased. Among the things for which she claimed a recovery,' was one for twenty-five barrels of corn, which she, at £the request of the administrator, after his appointment, had fed to the swine belonging to the deceased at the time of|his death. The court in relation to that item, use this language, on pages 268-9 of the opinion:
“One item was for corn fed to the stock of the estate at the request of the administrator, made after his appointment. 'Such agreement is but the personal contract of the administrator, and is no charge on the estate when demanded by the creditor. ’ ’
It is further said in that opinion, that if it was necessary to have this corn to feed to the swine, the administrator might have paid for it, and been allowed its value in the settlement; but he could not bind the estate to pay for the purchase of that corn. And all upon the theory I have stated, that it is not the business of the administrator to invest the funds of an estate and make purchases and have charges against the estate therefor.
*266 The case in the 47 N. Y., 366, Austin et al. v. Munro, et al., is a'case in which the doctrine is, as we think, well stated:
“The rule must be regarded as well settled that the contracts of executors, although made in the interests and for the benefit of the estate they represent, if made upon a new and independent consideration as for services rendered, goods or property sold and delivered, or other con. sideration moving between the promisee and the executors as promissors, are the personal contracts of the executors, and do not bind the estate, notwithstanding the services rendered, or goods or property furnished, or other considation moving from the promisee, are such that the executors could properly have paid for the same from the assets and been allowed for the expenditure in the settlement of their accounts. The principle is, that an executor máy disburse and use the funds of the estate for purposes authorized by law, but might not bind the estate by an executory contract,and thus create a liability not founded upon a contract or obligation of the testator.”
From these authorities and from the general doctrine of the duties of an administrator, we are clear that the court could not render any judgment — ought not to have rendered any judgment upon this petition against the administrator as such. The other question involved is whether a judgment could be rendered upon tie petition against the defendant personally.
The title of the case is, as I have already said, “J. J. Dean v. W. S. West, Administrator of the Estate of John Glenn, deceased.”
The allegations, however, are that as administrator he made the promise. But whether it be said that the words in the title of the case, after the name of the defendant, are simply descriptive of the defendant, or that he wls sued in his representative capacity, we still think it is settled in Ohio, that the judgment against him is against him personally,and not against him as administrator,and the judgment *267 itself, standing as it does, could not be enforced against the estate.
Attention is called to the case of Thomas, Admx., v. Moore, etc., 52 Ohio St., commencing on page 200. A suit was brought before a justice of the peace by Moore, as surviving partner of a firm of lawyers; the other partner, McKnight, having died. The bill of particulars set out that services were performed by this-firm for the defendant, at her request, in various suits brought on behalf of the estate then being administered by her, and the prayer was for judgment for the amount of these fees. This suit for fees was brought against “Elizabeth J. Thomas as administratrix of the estate of David Thomas, deceased.” The judgment was against the defendant in the case, and an appeal was taken by her. The question was, whether she was required to give a bond in order to perfect her appeal. It was urged that because of the statutory provisions as to appeals' by trustees,.no such bond was necessary. Judge Williams, in his opinion, uses this language:
“Sec. 6408, Rev, Stats., contains the general provision that ‘when the person appealing from any judgment or order in any court or before any tribunal is a party in a fiduciary capacity in which he has given bond within the state for the faithful discharge of his duties, and appeals in the interest of the trust, he shall not be required to give bond, but shall be allowed the appeal, by giving written notice to the court of his intention to appeal within the time limited for giving bond.’
“The provision just quoted is applicable to appeals from justices of the peace, and dispenses with the necessity of an undertaking for an appeal from their judgments in cases within its scope, namely, where the appellant is a party to the judgment in a fiduciary capacity, and the appeal is in the interest of the trust; so that, the inquiry here is, whether the defendant’s appeal presents a case of that kind, We think it does’not. The judgment is not against *268 the defendant in her fiduciary character. Though described in the proceedings as the administratrix of her intestate’s estate, the judgment rendered is not a judgment de bonis intestatoris, her designation in the proceedings as administratrix, being descriptive of her person merely, and execution issued upon the judgment can run only against her property. ’ ’
Laiorence & Estep, for Plaintiff in Error.
George A. Groot, for Defendant in Error.
From these considerations, we conclude that this judgment, as it stands, is a judgment against West personally, and not against him in h¡s representative capacity; that such judgment was warranted by the petition, and- the same is affirmed.